[Civ. No. 30368.   Second Dist., Div. Two.   June 13, 1967.]

BERTRAM S. ROSS et al., Plaintiffs and Appellants, v. ARTHUR BLANCHARD et al., Defendants and Respondents.

Edelberg, Miller & Rothenberg and David K. Golding for Plaintiffs and Appellants.

Richard G. Harris and John F. Harris for Defendants and Respondents.

FLEMING, J.—The subject of this appeal is an order discharging an attachment entered by the court at the time of its confirmation of an arbitration award. The chronology of the matter:

October 1962—Action on contract filed by building contractors against owners on October 19;

October 1962—Writ of attachment secured by plaintiff contractors, and property of defendant owners attached on October 22;

November 1962—Defendants' answer filed, including as an affirmative defense a demand for arbitration;

August 1963—After trial of the affirmative defense, arbitration ordered by the court, and further proceedings of the action stayed until disposition of the arbitration;

December 1964—Arbitration award made in favor of plaintiff contractors;

January 1965—Petition for confirmation of award filed by plaintiffs with the court;

April 1965—Confirmation of award and discharge of plaintiffs' attachment by the court.

From the briefs on appeal it may be inferred that the order discharging the attachment was based on the defendants' argument that, since plaintiffs were bound to arbitrate, their filing of a lawsuit was wrongful, and they should not be allowed to profit from their own wrong.

The basic question is whether provisional remedies are available in whole or in part to a party which has contracted to arbitrate disputes which may thereafter arise. Under some arbitration statutes certain provisional remedies are specifically reserved to the parties, for example, libel in rem under the Federal Arbitration Act, 9 U.S.C., section 8,[1] and mechanic's liens under the laws of New York (McKinney's Consolidated Laws of New York, Lien Law § 35). Other statutes, including the Uniform Arbitration Act, 9 Uniform Laws Annotated, are silent on this subject.

Although California is one of the states whose arbitration statute does not specifically cover the subject, some inferences may reasonably be derived from the pattern of our law. Our basic framework for enforcement of agreements to arbitrate involves a *stay* of the legal action until arbitration can be had, in contrast to the situation which would prevail if the statute provided for *dismissal* of the action. This distinction is one which the leading expert on arbitration, Professor Wesley A. Sturges, found significant in his treatise, Commercial Arbitration and Awards:

"In view of these statutory changes what is the position of a party to a statutory arbitration agreement who may desire to procure an attachment or an injunction, to file a mechanic's or other lien, or to procure the appointment of a receiver for protective purposes pending an arbitration and the making and confirmation of an award? Does the statutory irrevocability of such arbitration agreements prevent the institution of such proceedings?

"While several of the arbitration statutes provide only in general terms that such agreements shall be irrevocable, some of the arbitration statutes particularly provide that they shall be irrevocable by action, and expressly require a stay of *trial* or a stay of the *action* until an arbitration is had pursuant to the agreement. Such an express provision appears in the statutes of Arizona, California, Connecticut, Territory of Hawaii, Louisiana, Massachusetts, New Hampshire, New Jersey, New

---

[1]The Federal Arbitration Act, 9 U.S.C., § 8, specifically provides that if the basis of jurisdiction is a cause of action justiciable in admiralty then the party claiming to be aggrieved may begin his proceeding by libel and seizure of the vessel or property of the other party according to the use of admiralty proceedings. Congress has thus plainly declared that although the parties have agreed to arbitrate the traditional admiralty procedure with its concomitant security shall be available to the aggrieved party, including security obtained by attachment. (*The Anaconda* v. *American Sugar Refining Co.*, 322 U.S. 42 [88 L.Ed. 1117, 64 S.Ct. 863].)

York, Pennsylvania, Rhode Island, and United States, as reported *supra,* chapter 3, § 33. *Under these arbitration statutes at least, it would seem possible to institute sufficient proceedings to levy an attachment or to effect other process of seizure or sequestration without having the proceedings summarily abated."* (Pp. 328-329.) (Italics added.)

█ Our own reading of California's arbitration statute and the cases interpreting it convinces us that a contract to arbitrate by no means precludes a party to the contract from initially resorting to the courts. Code of Civil Procedure, section 1281.4, reads in part:

"If an application has been made to a court of competent jurisdiction, whether in this State or not, for an order to arbitrate a controversy which is an issue involved in an action or proceeding pending before a court of this State and such application is undetermined, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined and, if arbitration of such controversy is ordered, until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies.

"If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only."

█ From this and other sections of the statute, both directly and by implication, it is apparent,

1. either party may demand arbitration and both may waive it (Code Civ. Proc., § 1281.2) ;

2. a party may be estopped to demand arbitration ;

3. the particular issue in controversy may not fall within the terms of the arbitration agreement (Code Civ. Proc., § 1281.4) ;

4. an agreement to arbitrate is an affirmative defense (*Local 659, I.A.T.S.E.* v. *Color Corp. of America,* 47 Cal.2d 189, 194-195 [302 P.2d 294] ; *Berman* v. *Renart Sportswear Corp.,* 222 Cal.App.2d 385 [35 Cal.Rptr. 218]) ;

5. legal proceedings are not automatically stayed or dismissed but must be stayed on motion ;

6. the length of the stay may be a shorter period than the time it takes to arbitrate.

It follows that the remedy of arbitration by no means automatically ousts a court of general jurisdiction from the scene. In the present case it seems clear that the original complaint

was properly filed in October 1962, and, as a concomitant to the valid filing of an action, the original attachment was validly issued. Had defendants not raised the defense of arbitration the suit unquestionably could have gone ahead in its original form as an action at law. Defendants, however, pleaded an agreement to arbitrate as an affirmative defense, and after the trial of this affirmative defense the court in August 1963 entered the following order: "Court finds in favor of Defendants on their Fourth Affirmative Defense pleading the contractual right to arbitrate this controversy, and further finds that said Defendants have not waived said right of arbitration nor are said defendants estopped to demand arbitration. The further prosecution of this action is stayed until determination or other disposition of said arbitration. Further trial of this action is placed off calendar." Yet although the court stayed the further prosecution and trial of the action, it did not dismiss the suit nor did it discharge the attachment.

If we assume that the continuing benefit of provisional remedies may no longer be available when arbitration has been ordered, then at the time of the stay of the action defendants became privileged to move for the discharge of the existing attachment. Yet at no time during pendency of the arbitration proceedings did defendants make such a motion or otherwise apply for and obtain an order vacating the attachment. Both parties proceeded with arbitration, at the conclusion of which plaintiffs secured an award for substantially the full amount they had sought.

██ Plaintiffs, having complied with arbitration and obtained an award, became eligible under the terms of the stay to return to court and secure confirmation of the award and entry of judgment. Meanwhile Code of Civil Procedure, section 1287.6, had become relevant: "An award that has not been confirmed or vacated has the same force and effect as a contract in writing between the parties to the arbitration." Thus at this stage plaintiffs occupied the position of a litigant seeking judgment on a written contract, who would have available for his security various provisional remedies, including attachment. (Code Civ. Proc., § 537.) Plaintiffs' position was comparable to what it might have been in a suit on a promissory note during the course of which a confession of judgment had been agreed to by the defendant. Accordingly, even if the use of provisional remedies were disfavored during the pendency of the arbitration itself, after the petition for confirma-

tion of the arbitration award had been filed plaintiffs would have been entitled to use provisional remedies to secure the satisfaction of any judgment which might be entered on the award. We have no doubt that at the time of their petition for confirmation plaintiffs would have been entitled to attach the property of the defendants as security for a judgment.

To recapitulate, then, the situation during the different phases of this action:

1. at the time of the filing of the complaint plaintiffs' attachment was valid;

2. during the period August 1963 to January 1965 plaintiffs' attachment may have become subject to a motion to discharge;

3. on the filing of the petition for confirmation plaintiffs again became entitled as a matter of right to the remedy of attachment.

From August 1963 to January 1965 defendants might have applied to vacate the attachment and perhaps secured its discharge, but they did not do so. By itself the stay of further prosecution of the action had no effect on the attachment since the mere stay of an action keeps all matters relating to an attachment in statu quo until an application to discharge the attachment has been made and acted upon. (*Halstead* v. *Halstead*, 72 Cal.App.2d 832, 837 [165 P.2d 513].) After January 1965 plaintiffs' right to attach was no longer vulnerable to attack on any current ground. Meanwhile events had not stood still, and, according to the oral argument, the real party in interest had become the defendants' trustee in bankruptcy, who had succeeded to their rights and liabilities. We hold the view that defendants' privilege of applying for discharge of the attachment terminated in January 1965 and thereafter the attachment was no longer subject to a motion to discharge. Accordingly, we think erroneous the ruling which discharged plaintiffs' attachment in April 1965 at the time the arbitration award in favor of plaintiffs was confirmed.

The one California case we have found on the use of provisional remedies in conjunction with arbitration, *Homestead Sav. & Loan Assn.* v. *Superior Court,* 195 Cal.App.2d 697 [16 Cal.Rptr. 121], appears in harmony with this reasoning. That case squarely held that an arbitration provision in a construction contract was not repudiated nor waived by the filing of a claim for a mechanic's lien or by the filing of suit to foreclose the mechanic's lien. The court declared the lien valid even though there had been an agreement to arbitrate. In point of

fact *Homestead*, even more strongly than the case at bench, supports the existence and use of provisional remedies until arbitration has been ordered, because in that case the party obtaining the provisional remedy was the same party which later sought and obtained arbitration. In upholding the provisional remedy of a mechanic's lien the court said: "The time in which to file for record a mechanic's lien is relatively short. It requires no action by the opposing party. It does preserve the status quo of the property. Under section 1200 of the Code of Civil Procedure the real party in interest had a right to file a separate action to obtain a personal judgment against the person personally liable for such debt, notwithstanding his lien. In view of these circumstances, the filing of a claim of lien is not inconsistent with, or a repudiation of, arbitration of the personal liability under the contract, and is not a waiver of it." (P. 701.)

The *Homestead* case held that arbitration was available even if provisional remedies had been used. Our case involves somewhat the converse, i.e., that provisional remedies continue in effect even though arbitration has been ordered. *Homestead*, in holding that the right to arbitration is not lost merely by the use of provisional remedies, strongly implies that there is no essential inconsistency between the two procedures.

Similar approval of the use of provisional remedies in controversies subject to arbitration has been given by the Massachusetts Supreme Court (*Salvucci* v. *Sheehan*, 349 Mass. 659 [212 N.E.2d 243] (equitable attachment)), and by the courts of New York (*Auerbach* v. *Grand Nat. Pictures*, 176 Misc. 1031 [29 N.Y.S.2d 747], affd. 263 App.Div. 712 [31 N.Y.S.2d 670], appeal denied 263 App.Div. 807 [32 N.Y.S.2d 129] (attachment)). In the well-reasoned *Salvucci* case, the Massachusetts court in 1965 ruled there was nothing inconsistent between an agreement to arbitrate and an action at law utilizing the remedy of equitable attachment to secure payment of any award that might be obtained in the arbitration: "We see no reason why the Superior Court should not have jurisdiction to bring the property in question within its control pending a determination of the issues of law under the procedure of the arbitration act. If the debt is proved to the satisfaction of the arbitrators, the court may continue within its equity power to do what is necessary for its collection." (P. 245.)

In the case at bench we need not go so far as the Massa-

chusetts court and decide that the trial court had no power to discharge the attachment at the time of the entry of the stay, for clearly in our case, whether or not the court had the power, it did not attempt to exercise it until the time within which it might have done so had passed. After the arbitration award and petition for confirmation, the application to discharge the attachment came too late.

That part of the judgment discharging the attachment is reversed.

Roth, P. J., and Herndon, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 7, 1967.