Filed 1/12/16  Goodridge v. KDF Automotive Group CA4/1
Opinion on remand from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| WILLIAM GOODRIDGE, | D060269 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2010-00105355-CU-CO-CTL) |
| KDF AUTOMOTIVE GROUP, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, John S. Meyer, Judge.  Reversed and remanded with directions.

Toschi, Sidran, Collins & Doyle, David R. Sidran and Thomas M. Crowell for Defendant and Appellant.

Rosner, Barry & Babbitt, Hallen D. Rosner, Christopher P. Barry and Angela J. Patrick for Plaintiff and Respondent.

Defendant KDF Automotive Group, Inc. (KDF) appeals an order denying its petition to compel arbitration of the action filed against it by plaintiff William Goodridge

arising out of his purchase of a used automobile from KDF. On appeal, KDF contends the trial court erred by concluding the arbitration clause in the purchase contract was unconscionable and therefore unenforceable. On August 24, 2012, we issued our initial opinion in this case, concluding the arbitration clause was procedurally and substantively unconscionable and therefore unenforceable, and affirming the order denying the petition to compel arbitration.

On December 19, 2012, the California Supreme Court granted review of the case and deferred further action pending its decision in a similar case (*Sanchez v. Valencia Holding Co., LLC* (2011) 201 Cal.App.4th 74, review granted Mar. 21, 2012, S199119). On August 3, 2015, the California Supreme Court issued its opinion in *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899 (*Sanchez*), which, as discussed below, concluded the arbitration clause in that case was not unconscionable and was therefore enforceable. The California Supreme Court transferred this case back to us with directions to vacate our decision and reconsider it in light of *Sanchez*. We subsequently requested the parties file supplemental letter briefs discussing the effect of *Sanchez* on this case. The parties filed, and we have read and considered, their supplemental briefs. We now vacate our original opinion issued August 24, 2012, and issue this new opinion reversing the trial court's order.

FACTUAL AND PROCEDURAL BACKGROUND

On May 16, 2010, Goodridge attended an automobile "tent sale" and signed a retail installment sale contract (Contract) to purchase a 2008 Hyundai Elantra from KDF, an automobile dealership doing business as El Cajon Mitsubishi. Goodridge was

2

presented with a stack of preprinted form documents and was told by a KDF employee where to sign and/or initial each document. He was not given an opportunity to read all of the documents in full or to negotiate any of the documents' preprinted terms. The documents were presented to Goodridge on a "take-it-or-leave-it" basis. KDF did not ask him whether he was willing to arbitrate any disputes or inform him there was an arbitration clause on the back side of the Contract. He did not see the arbitration clause before signing the Contract.

On or about May 21, having concerns about the documents, Goodridge went to KDF and was informed he needed to re-sign the sale documents. He was given and signed both an acknowledgement of the first rewritten contract and a second Contract.[1] Although it was May 21, the second Contract was dated May 16. As before, Goodridge was not given an opportunity to read the documents in full or to negotiate any of the documents' preprinted terms. The documents were again presented to Goodridge on a "take-it-or-leave-it" basis. He was unaware there was an arbitration clause on the Contract's back side.

The Contract document consists of one piece of paper (i.e., preprinted Reynolds & Reynolds Form No. 553-CA-ARB 1/10). It apparently is about 26 inches long and has provisions on its front and back sides. Goodridge signed or initialed the front of the Contract in nine places. There are no signatures, initials, or other handwriting on the

---

[1] For purposes of this opinion, the two purchase contracts are virtually identical and therefore we use the term "Contract" to refer to both contracts.

back side.  An arbitration provision, entitled "ARBITRATION CLAUSE," is located near

the bottom of the back side and is outlined (like many other preceding provisions) by

black lines.  The arbitration clause provides:

"ARBITRATION CLAUSE

"PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL
RIGHTS

"1.  EITHER YOU OR WE MAY CHOOSE TO HAVE ANY
DISPUTE BETWEEN US DECIDED BY ARBITRATION AND
NOT IN COURT OR BY JURY TRIAL.

"2.  IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP
YOUR RIGHT TO PARTICIPATE AS A CLASS
REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS
CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY
RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION
OF INDIVIDUAL ARBITRATIONS.

"3.  DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION
ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT,
AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN
COURT MAY NOT BE AVAILABLE IN ARBITRATION.

"Any claim or dispute, whether in contract, tort, statute or otherwise
(including the interpretation and scope of this Arbitration Clause,
and the arbitrability of the claim or dispute), between you and us or
our employees, agents, successors or assigns, which arises out of or
relates to your credit application, purchase or condition of this
vehicle, this contract or any resulting transaction or relationship
(including any such relationship with third parties who do not sign
this contract) shall, at your or our election, be resolved by neutral,
binding arbitration and not by a court action.  If federal law provides
that a claim or dispute is not subject to binding arbitration, this
Arbitration Clause shall not apply to such claim or dispute.  Any
claim or dispute is to be arbitrated by a single arbitrator on an
individual basis and not as a class action.  You expressly waive any
right you may have to arbitrate a class action.  You may choose one
of the following arbitration organizations and its applicable rules: the
National Arbitration Forum . . . (www.arbforum.com), the American

4

Arbitration Association . . . (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

"Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside . . . . We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be *final and binding* on all parties, *except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party* requesting new arbitration *shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs.* Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration.

"You and we retain any rights to *self-help remedies, such as repossession.* You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. *If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the*

5

*remainder of this Arbitration Clause shall be unenforceable*." (Italics added.)

On December 2, 2010, Goodridge, individually and on behalf of others similarly situated, filed the complaint in this action against KDF and Mission Federal Services LLC, alleging 11 causes of action, including causes of action for violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), violation of the Automobile Sales Finance Act (Civ. Code, § 2981 et seq.), unlawful and/or unfair business practices (Bus. & Prof. Code, § 17200 et seq.), fraudulent misrepresentation, and negligent misrepresentation.

On January 10, 2011, KDF answered the complaint, denying each allegation and asserting 25 affirmative defenses. The answer did not assert any right to arbitrate the dispute as an affirmative defense.

During the period of February through May 2011, KDF responded to multiple sets of Goodridge's discovery requests. None of those responses mentioned any right to arbitrate the dispute or an intent to require arbitration.

In May 2011, KDF filed a case management statement, requesting a jury trial and estimating the trial would take 10 days. KDF did not check any of the boxes indicating a willingness to participate in mediation, arbitration, or other alternative dispute resolution method. However, KDF indicated it was willing to participate in an early settlement conference three to four weeks before the trial date. KDF also indicated it expected to file a "motion to compel (if needed) [and] motions in limine." It also indicated its intent to take Goodridge's deposition and engage in written discovery.

On June 14, 2011, KDF filed a petition to compel arbitration of the instant action based on the arbitration clause in the Contract. It subsequently filed an application for a stay of proceedings in the action pending a ruling on its petition to compel arbitration. The trial court granted the application and stayed the proceedings pending its ruling on the petition to compel. Goodridge opposed the petition to compel arbitration, arguing the arbitration clause was unconscionable and unenforceable and that by delay KDF waived any right it had to arbitrate the dispute. In support of his opposition, Goodridge filed his declaration confirming the transactional facts described above. His declaration further stated: "The documents (including the purchase contract) were given to me and I was just told 'sign here' in various places. There was no question of choice on my part or of our being able to 'negotiate' anything. I had no reason to suspect that hidden on the back of the contract that told me how much the vehicle cost and how much my monthly payments would be was a section that prohibited me from being able to sue in court if I had a problem." It further stated: "When I signed both of the purchase contracts and related documents, [KDF] did not ask me if I was willing to arbitrate any disputes with it or its assignees, [KDF] did not tell me there was an 'arbitration clause' on the back side of the purchase contract, and I did not see any such clause before I signed the documents. . . . I was not given any opportunity at any time during my transaction with [KDF] to negotiate whether or not I would agree to arbitrate any potential disputes, or any of the terms by which I would agree to arbitrate any disputes. I was never given an option whether to sign a contract with an arbitration clause or one without. . . ." It further stated: "No one at [KDF] ever turned over either sale contract to show me the writing on the back or asked

7

me to sign any sections on the back of the contract where [KDF] claims the arbitration clause is located."

Finally, his declaration addressed the financial burden of arbitration costs, stating: "[I]f the Court were to enforce the arbitration clause, it would create a financial burden on me and my family that we simply could not afford. . . . [I]f the defendants lose they may be allowed (without my consent) to request a new arbitration with a three arbitrator panel—which would likely result in three arbitrators simultaneously charging us for their time—and that we could potentially be responsible for all of these costs if I do not win that new arbitration. I am not financially able to pay such potential arbitration fees." KDF replied to the opposition, arguing the Contract was not unconscionable and that it had not waived its right to arbitrate the dispute. KDF argued: "The United States Supreme Court in [*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 [131 S.Ct. 1740, 179 L.Ed.2d 742] (*AT&T*)] makes it clear that unconscionability is no longer a valid objection to an arbitration agreement."

On July 15, the trial court issued a tentative ruling denying the petition to compel arbitration based on KDF's waiver of any right to arbitrate. Following oral argument by counsel (including KDF's argument that it had not waived its right to arbitrate), the court took the matter under submission.

On July 22, the trial court issued a minute order denying the petition to compel arbitration on grounds of unconscionability of the arbitration clause. The court stated in part:

8

"Unconscionability is a method in which courts can refuse to enforce the contract. California cases analyze unconscionability as having two separate elements—procedural and substantive. [Citations.] Substantive unconscionability focuses on the actual terms of the agreement, while procedural unconscionability focuses on the manner in which the contract was negotiated and the circumstances of the parties. California courts generally require a showing of both procedural and substantive unconscionability at the time the contract was made. [Citations.]

"The arbitration clause is procedurally unconscionable. The clause was on the backside of a two-sided document. [Citation.] [Goodridge] was not advised of the arbitration clause nor was arbitration referenced on the front of the contract, the only side where [Goodridge] was required to sign. [Citation.] The arbitration clause is also substantively unconscionable since the clause is unfairly one-sided. The clause permits [KDF] to avoid arbitration as to some claims but forces [Goodridge] to arbitrate all claims. [KDF] argues the right to repossession or 'self-help' applies to both parties, but as a realistic matter, only [KDF] would pursue repossession. No self-help options are available to [Goodridge]. Further, if the claim is forced into arbitration, [KDF] does not give up any rights but, for example, [Goodridge] cannot appeal losing a claim for injunctive relief. [Goodridge] can only appeal an award of damages if he receives nothing.

"[KDF] argues [Goodridge's] argument regarding unconscionability has been preempted by the US Supreme Court's ruling in *AT&T*. This is not the case. While *AT&T* clearly abrogates the California Supreme Court's ruling on the unconscionability of class action waivers in arbitration clauses as discussed in *Discover Bank* [*v. Superior Court* (2005) 36 Cal.4th 148 (*Discover Bank*)], it does not go so far as to preempt all decisional law on unconscionability."

On the issue of waiver, the court stated: "[T]he court does not find [KDF] waived its right to arbitrate. . . . [KDF's] right to enforce the arbitration clause was confirmed as of April 27, 2011[,] when the US Supreme Court issued its opinion in [*AT&T*], which overruled the California Supreme Court's decision in [*Discover Bank*]. [¶] Accordingly, although the conduct of [KDF] may be characterized as disingenuous, the court simply

9

cannot conclude [KDF] waived its right to compel arbitration, having filed it[s] petition some two months after the change in the law."  KDF timely filed a notice of appeal.

On August 24, 2012, we issued our initial opinion in this case, concluding the arbitration clause was procedurally and substantively unconscionable and therefore unenforceable and affirming the order denying the petition to compel arbitration.  On December 19, 2012, the California Supreme Court granted review of the case and deferred further action pending its decision in *Sanchez* (*Sanchez v. Valencia Holding Co., LLC* (2011) 201 Cal.App.4th 74, review granted Mar. 21, 2012, S199119).  On August 3, 2015, the California Supreme Court issued its opinion in *Sanchez, supra,* 61 Cal.4th 899, concluding the arbitration clause in that case was not unconscionable and was therefore enforceable.  On September 30, the California Supreme Court transferred this case back to this court with directions to vacate our decision and reconsider it in light of its decision in *Sanchez.*  On October 30, we requested the parties file supplemental letter briefs discussing the effect of *Sanchez* on this case.  The parties filed, and we have read and considered, their supplemental briefs.  Goodridge argues that KDF waived its right to enforce the arbitration clause.

DISCUSSION

I

*Standards of Review*

On appeal from an order denying a motion to compel arbitration, "[u]nconscionability findings are reviewed de novo if they are based on declarations that raise 'no meaningful factual disputes.'  [Citation.]  However, where an unconscionability

10

determination 'is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence.' [Citation.] The ruling on severance is reviewed for abuse of discretion." (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144.) Considering all disputed factual findings supported by substantial evidence favorably to the trial court's determination, the question of whether, based on those facts, a contract's arbitration provision is unconscionable is a question of law we determine de novo or independently. (*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892.) To the extent the extrinsic evidence is undisputed, we independently review the contract to determine whether it is unconscionable. (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 579.)

In contrast, a trial court's finding on the issue of waiver of an arbitration clause is reviewed for substantial evidence to support that finding. "Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).) We may not reverse the trial court's finding of waiver "unless the record as a matter of law compels finding nonwaiver." (*Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211.) We construe the evidence, and all reasonable inferences therefrom, to support the trial court's finding. (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 946.)

11

## II

### *California Law on Unconscionability*

Federal and state law reflect a strong public policy favoring arbitration as a speedy and relatively inexpensive means of dispute resolution. (*St. Agnes, supra,* 31 Cal.4th at p. 1204; *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443 (*Lewis*).) "Nonetheless, federal and California courts may refuse to enforce an arbitration agreement 'upon such grounds as exist at law or in equity for the revocation of any contract,' including waiver [and unconscionability]. (9 U.S.C. § 2; see also Code Civ. Proc., § 1281; *St. Agnes*, at pp. 1194-1195.)" (*Lewis*, at pp. 443-444.) Section 2 of the Federal Arbitration Act (FAA) provides that agreements to arbitrate disputes are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) That provision allows a court to revoke an arbitration agreement if generally applicable contract defenses, such as fraud, duress, or unconscionability, apply. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2012) 206 Cal.App.4th 949, 956; *AT&T*, *supra*, 563 U.S. at p. 338 [131 S.Ct. at p. 1746].) Code of Civil Procedure section 1281 provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Civil Code section 1670.5, subdivision (a), provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any

12

unconscionable clause as to avoid any unconscionable result."  "California law . . . favors enforcement of arbitration agreements, save upon grounds that exist at law or in equity for the revocation of any contract, such as unconscionability."  (*Iskanian*, at p. 956.)

AT&T "did not overthrow the common law contract defense of unconscionability whenever an arbitration clause is involved.  Rather, [*AT&T*] reaffirmed that the savings clause preserves generally applicable contract defenses such as unconscionability, so long as those doctrines are not 'applied in a fashion that disfavors arbitration.' "  (*Kilgore v. KeyBank, N.A.* (9th Cir. 2012) 673 F.3d 947, 963, quoting *AT&T*, *supra*, 563 U.S. at p. 341 [131 S.Ct. at p. 1747]; *Sanchez*, *supra*, 61 Cal.4th at pp. 912-913.)  In overruling the *Discover Bank* rule,[2] *AT&T* stated: "Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives."  (*AT&T, supra*, 563 U.S. at p. 343 [131 S.Ct. at p. 1748.)  *AT&T* held, in effect, that the FAA preempts any California or other state law or rule that disfavors, or stands as an obstacle to, arbitration by deeming unconscionable an arbitration agreement that waives, explicitly or implicitly, class arbitration.  Based on *AT&T*'s reasoning, we conclude the FAA likewise

_____

[2]    In *Discover Bank*, the California Supreme Court held: "[A]t least under some circumstances, the law in California is that class action waivers in consumer contracts of adhesion are unenforceable, whether the consumer is being asked to waive the right to class action litigation or the right to classwide arbitration."  (*Discover Bank*, *supra*, 36 Cal.4th at p. 153.)  The court found class action waivers in certain circumstances would be unconscionable and therefore unenforceable.  (*Id*. at pp. 162-163.)  *AT&T* concluded: "[C]lass arbitration, to the extent it is manufactured by *Discover Bank* rather than consensual, is inconsistent with the FAA."  (*AT&T*, *supra*, 563 U.S. at p. 348 [131 S.Ct. at p. 1751].)

13

precludes a state law that disfavors arbitration of a particular type of claim (e.g., consumer contract dispute) when arbitration of other types of disputes is not so disfavored. (*Sanchez*, at pp. 912-913.) To the extent California's doctrine of unconscionability is applied to the consumer contract dispute in this case in the same manner as it would be applied to contract disputes in general, neither *AT&T* nor the FAA bars a court from applying the doctrine of unconscionability to an arbitration agreement and, based on a finding of unconscionability, refusing to enforce that arbitration agreement (or, in appropriate circumstances, severing the unconscionable and unenforceable portion(s) and enforcing the remainder of the arbitration agreement). (*Ibid.*)

We are unpersuaded by KDF's argument that California courts have generally disfavored arbitration agreements by applying the doctrine of unconscionability differently, or more stringently, to arbitration agreements than to contracts in general. In any event, in deciding this case, we apply controlling California case law regarding the doctrine of unconscionability as it applies to contracts in general and therefore comply with *AT&T*'s mandate.

Under California's doctrine of unconscionability, a court may refuse to enforce a contract it determines to be unconscionable. (Civ. Code, § 1670.5, subd. (a); *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113-114 (*Armendariz*).) Unconscionability generally includes an absence of meaningful choice by one party together with contract terms that are unreasonably favorable to the other party. (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 821.) Alternatively

stated, unconscionability has both procedural and substantive elements. (*Armendariz*, at pp. 113-114; *A & M Produce Co.* (1982) 135 Cal.App.3d 473, 486.) To refuse to enforce a contract for unconscionability, a court generally must find the contract is both procedurally and substantively unconscionable. (*Armendariz*, at p. 114; *Sanchez*, *supra*, 61 Cal.4th at p. 910; *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 87 (*Gutierrez*).)

*Procedural unconscionability.* "The procedural element [of unconscionability] focuses on 'oppression' or 'surprise.' [Citations.] Where the parties to a contract have unequal bargaining power and the contract is not the result of real negotiation or meaningful choice, it is oppressive. 'Surprise' is defined as 'the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.' [Citations.] 'The procedural element of an unconscionable contract generally takes the form of a contract of adhesion.' [Citations.] An adhesive contract is defined as ' "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." [Citation.]' " (*Gutierrez*, *supra*, 114 Cal.App.4th at pp. 87-88.)

*Substantive unconscionability.* "Of course, simply because a provision within a contract of adhesion is not read or understood by the nondrafting party does not justify a refusal to enforce it. The unbargained-for term may only be denied enforcement if it is also *substantively* unreasonable. [Citation.] Substantive unconscionability focuses on whether the provision is overly harsh or one-sided and is shown if the disputed provision

15

of the contract falls outside the 'reasonable expectations' of the nondrafting party or is 'unduly oppressive.' [Citations.] Some courts have imposed a higher standard: the terms must be ' "so one-sided as to *shock the conscience*." [Citation.]' [Citation.] Where a party with superior bargaining power has imposed contractual terms on another, courts must carefully assess claims that one or more of these provisions are one-sided and unreasonable." (*Gutierrez*, *supra*, 114 Cal.App.4th at p. 88.)

"Though courts refuse to enforce only those agreements that are both procedurally and substantively unconscionable, the two factors need not each exist to the same degree. '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' (*Armendariz*, *supra*, 24 Cal.4th at p. 114.)" (*Gutierrez*, *supra*, 114 Cal.App.4th at p. 88; *Sanchez*, *supra*, 61 Cal.4th at p. 910.) Alternatively stated, a sliding scale is applied so that the more substantively unconscionable a contract is, the less procedural unconscionability is required for it to be unenforceable as unconscionable. (*Armendariz*, at p. 114; *Sanchez*, at p. 910; *Morris v. Redwood Empire Bancorp.* (2005) 128 Cal.App.4th 1305, 1317.) In turn, the more procedurally unconscionable a contract is, the less substantive unconscionability is required for it to be unenforceable as unconscionable. (*Armendariz*, at p. 114; *Morris*, at p. 1317.)

III

*Unconscionability of Contract's Arbitration Clause*

KDF contends the trial court erred by concluding the Contract's arbitration clause was unconscionable and therefore unenforceable. Because KDF did not submit any

16

evidence disputing the evidence submitted by Goodridge, we decide the question of unconscionability of the Contract's arbitration clause de novo, or independently, based on the undisputed facts in this case.

A

*Procedural unconscionability.* Procedural unconscionability focuses on two factors: oppression and surprise. Based on our independent review of the undisputed facts in this case, we, like *Sanchez*, conclude "the adhesive nature of the [C]ontract is sufficient to establish some degree of procedural unconscionability." (*Sanchez, supra*, 61 Cal.4th at p. 915.) The facts in this case are very similar to those in *Sanchez*, which involved a vehicle purchase contract virtually identical to the Contract in this case. (*Id.* at pp. 907-909.) We are bound to follow, and therefore adopt, the reasoning and holding in *Sanchez*, which we incorporate herein by reference without restatement, and conclude there is some degree of procedural unconscionability in this case. (*Id.* at pp. 914-915; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*) ["all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction"].)

B

*Substantive unconscionability.* Substantive unconscionability focuses on whether the arbitration provision is overly harsh or one-sided and is outside the reasonable expectations of Goodridge (the nondrafting party) or is unduly oppressive. (*Gutierrez, supra*, 114 Cal.App.4th at p. 88.) Based on our independent review of the undisputed facts in this case, we, like *Sanchez*, conclude the Contract's arbitration clause is not

17

substantively unconscionable.  The Contract in this case is virtually identical to the vehicle purchase contract in *Sanchez*.  (*Sanchez*, *supra*, 61 Cal.4th at pp. 907-909.)  We are bound to follow, and therefore adopt, the reasoning and holding in *Sanchez*, which we incorporate herein by reference without restatement, and conclude the Contract is not substantively unconscionable.  (*Id*. at pp. 915-922; *Auto Equity*, *supra*, 57 Cal.2d at p. 455.)

C

*Unconscionability*.  Applying a sliding scale for procedural and substantive unconscionability, we conclude the Contract's arbitration clause is *not* unconscionable under California's doctrine of unconscionability that generally applies to all contracts.  (*Armendariz*, *supra*, 24 Cal.4th at pp. 113-114; *Gutierrez*, *supra*, 114 Cal.App.4th at pp. 87-88.)  Although there is some degree of procedural unconscionability, there is no substantive unconscionability.  (*Sanchez*, *supra*, 61 Cal.4th, at pp. 914-922.)  We are bound to follow, and therefore adopt, the holding in *Sanchez*, and conclude the Contract's arbitration provision is *not* unconscionable and therefore is enforceable under California law.  (*Id*. at p. 907; *Auto Equity*, *supra*, 57 Cal.2d at p. 455.)

IV

*Class Action Waiver Provision*

Although we conclude the Contract's arbitration clause is not unconscionable, Goodridge argues it is nevertheless void because it contains a class action waiver provision illegal under applicable law.  However, *Sanchez* addressed that same argument and concluded the FAA and *AT&T* preempted California's bar against class action

18

waivers in arbitration agreements covered by the FAA. (*Sanchez*, *supra*, 61 Cal.4th at pp. 923-924.) We are bound to follow, and therefore adopt, the holding in *Sanchez*, and conclude the Contract's arbitration clause is not void based on its class action waiver provision. (*Ibid.*; *Auto Equity*, *supra*, 57 Cal.2d at p. 455.)

V

*KDF's Waiver of Arbitration Right*

Goodridge contends in his respondent's brief, as well as in his supplemental letter brief, that KDF cannot enforce the Contract's arbitration provision because it waived its right to do so. However, the trial court expressly found KDF did not waive its right to enforce the arbitration provision and we conclude there is substantial evidence to support that finding.

A

In its July 22, 2011, order denying KDF's petition to compel arbitration, the trial court expressly found KDF had not waived its right to compel arbitration, stating:

> "[T]he court does not find [KDF] waived its right to arbitrate. . . .
> [KDF's] right to enforce the arbitration clause was confirmed as of
> April 27, 2011[,] when the US Supreme Court issued its opinion in
> [*AT&T*], which overruled the California Supreme Court's decision in
> [*Discover Bank*]. [¶] Accordingly, although the conduct of [KDF]
> may be characterized as disingenuous, the court simply cannot
> conclude [KDF] waived its right to compel arbitration, having filed
> it[s] petition some two months after the change in the law."

B

"Federal and state laws reflect a strong public policy favoring arbitration . . . .
[Citations.] Nonetheless, federal and California courts may refuse to enforce an

19

arbitration agreement 'upon such grounds as exist at law or in equity for the revocation of any contract,' including waiver." (*Lewis, supra,* 205 Cal.App.4th at pp. 443-444.) "State law, like the FAA, reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims. [Citation.] Although a court may deny a petition to compel arbitration on the ground of waiver ([Code Civ. Proc.,] § 1281.2, subd. (a)), waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195.) Code of Civil Procedure section 1281.2 provides that, on a petition to compel arbitration, a trial court shall order the parties to arbitrate a controversy if it determines an agreement to arbitrate the controversy exists, *unless* the court determines: "(a) [t]he right to compel arbitration has been waived by the petitioner . . . ."

"[U]nder the [FAA] and the California Arbitration Act [citation] courts apply the same standards in determining waiver claims. [Citation.] . . . In *St. Agnes*, the California Supreme Court adopted as the California standard the same multifactor test employed by nearly all federal courts for evaluating waiver claims." (*Lewis, supra*, 205 Cal.App.4th at p. 444.) In *St. Agnes*, the California Supreme Court concluded the following factors should be considered by a trial court in assessing a claim a party has waived a right to arbitrate: " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking

20

arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)

The question whether a party has waived a right to arbitrate is ordinarily a question of fact for the trial court to decide. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 982-983.) A trial court's finding on the issue of waiver of an arbitration clause is reviewed for substantial evidence to support that finding. "Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court." (*St. Agnes,* at p. 1196.) We may not reverse the trial court's finding of waiver "unless the record as a matter of law compels finding nonwaiver." (*Davis v. Continental Airlines, Inc.*, *supra*, 59 Cal.App.4th at p. 211.) We construe the evidence, and all reasonable inferences therefrom, to support the trial court's finding. (*Burton v. Cruise*, *supra*, 190 Cal.App.4th at p. 946.)

C

We conclude Goodridge has not carried his burden on appeal to show the evidence is insufficient to support the trial court's finding that KDF did not waive its right to enforce the Contract's arbitration provision. The trial court, in effect, found KDF's initial failure to assert its right to enforce the arbitration provision was excused by the subsequent change in the law of arbitration that occurred on the issuance of the United States Supreme Court opinion in *AT&T*. The court noted KDF's right to enforce the

21

arbitration clause was confirmed on April 27, 2011, when the United States Supreme Court issued *AT&T*, overruling the California Supreme Court's decision in *Discover Bank*, and therefore KDF did not unduly delay by filing its petition to compel arbitration less than two months after the issuance of *AT&T*.

We conclude there is substantial evidence to support the trial court's finding that KDF did not unduly delay in asserting, or otherwise waive, its right to enforce the arbitration provision. On December 2, 2010, Goodridge filed the instant class action against KDF. KDF thereafter filed an answer to the complaint and responded to multiple sets of Goodridge's discovery requests without requesting or mentioning the Contract's arbitration provision. On April 27, 2011, the United States Supreme Court issued its opinion in *AT&T*, which had the effect of changing the law applicable to arbitration provisions that contain class action waivers. (*AT&T*, *supra*, 563 U.S. at pp. 345-346, 351; *Sanchez*, *supra*, 61 Cal.4th at pp. 923-924.) Although before *AT&T* arbitration provisions that waived rights to class actions were generally unenforceable, after *AT&T* arbitration provisions containing class action waivers generally are enforceable. (*Sanchez*, at pp. 906-907, 923-924.) On June 14, KDF filed its petition to compel arbitration of the instant action based on the arbitration clause in the Contract. Goodridge opposed the petition on the ground KDF had unreasonably delayed in asserting its right to arbitration. KDF replied to his opposition, arguing it had not waived its right to arbitrate the dispute because of the change in law caused by *AT&T*. KDF argued: "The United States Supreme Court in [*AT&T*] makes it clear that unconscionability is no longer a valid

objection to an arbitration agreement." The trial court agreed with KDF's position, finding it had not waived its right to enforce the Contract's arbitration provision.

Based on our review of the record, we conclude there is substantial evidence to support the court's finding that KDF did not waive its right to enforce the arbitration provision. The court could reasonably find KDF's failure to immediately assert its right to enforce the arbitration provision after Goodridge filed the instant action was justified by *Discover Bank*'s rejection of class action waivers in arbitration provisions, which was, at the time, the precedent that courts followed. However, on April 27, 2011, *AT&T* was issued, overruling *Discover Bank* and thereby causing a change in the law that applied to the enforcement of arbitration provisions in California. The trial court could reasonably find KDF was justified by not asserting its right to enforce the arbitration provision before the issuance of *AT&T* and by waiting less than two months after the issuance of *AT&T* to file its petition to compel arbitration.

To the extent Goodridge cites other evidence, and inferences therefrom, favorable to him, he misconstrues and/or misapplies the applicable substantial evidence standard of review. In reviewing the trial court's finding on the factual issue of whether KDF waived its right to enforce the arbitration provision, we construe the evidence, and all reasonable inferences therefrom, favorably to support that finding. (*Burton v. Cruise*, *supra*, 190 Cal.App.4th at p. 946.) By citing evidence, and inferences therefrom, that would have supported a contrary finding by the court, Goodridge does not persuade us the evidence is insufficient to support the court's finding KDF did not waive its right to enforce the arbitration provision.

First, although KDF filed an answer to his complaint, Goodridge does not cite any case or other authority showing the filing of an answer by a defendant necessarily waives, or is inconsistent with enforcement of, a right to arbitrate a dispute. Furthermore, although KDF's failure to plead the arbitration agreement as an affirmative defense in its answer presumably is an act inconsistent with a later assertion of a right to arbitrate (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 557-558), the trial court properly considered other factors, particularly *AT&T*'s change in the law regarding the validity of arbitration provisions containing class action waivers, in determining whether KDF waived that right as a matter of law.

Second, although KDF responded to multiple sets of Goodridge's discovery requests without requesting or mentioning the Contract's arbitration provision, those discovery actions did not necessarily constitute substantial invocation of the litigation machinery and those actions were not shown to be unavailable in arbitration.

Third, although KDF did not file its motion to compel arbitration until about six months after the complaint was filed, much of that delay (i.e., almost five months), as KDF argued below, was caused by its adherence to then-applicable law (i.e., *Discover Bank*) that generally precluded the enforcement of arbitration provisions with class action waivers. The trial court could reasonably find KDF acted promptly, and in good faith, by filing its petition to compel less than two months after the issuance of *AT&T*, which overruled *Discover Bank* and changed the law regarding the enforceability of class action waivers in arbitration provisions. Furthermore, at the time KDF filed its petition to compel arbitration, the trial was not scheduled to begin for another five months.

24

Finally, and most importantly, Goodridge did not show he was prejudiced by KDF's delay and purported inconsistent actions. Prejudice sufficient to find a waiver of an arbitration agreement is found only "where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1204.) Goodridge did not meet his burden to show prejudice sufficient to support a finding of waiver by KDF of its right to arbitrate. Considering all of the *St. Agnes* factors, we conclude there is substantial evidence to support the trial court's finding that KDF did not waive its right to enforce the Contract's arbitration provision. Goodridge has not carried his burden on appeal to show otherwise. We reject his assertion the trial court's order denying KDF's motion to compel arbitration should be upheld on that alternative ground.[3]

---

[3] Goodridge summarily argues that because the relief requested (e.g., injunctive relief) for certain causes of action alleged in his complaint cannot be the subject of arbitration, those causes of action must be severed from the other causes of action that *are* subject to arbitration under the Contract's arbitration provision. However, because he has not presented any substantive legal analysis persuading us those causes of action are not arbitrable, we need not, and do not, address that argument. In any event, the cases he summarily cites in support of his argument (i.e., *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303 and *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066) have been, in effect, overruled by *AT&T* and therefore do not require severance of any of his causes of action from arbitration. (See, e.g., *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1136; *Ferguson v. Corinthian Colleges, Inc.* (9th Cir. 2013) 733 F.3d 928, 934-937; *Kilgore v. Keybank, Nat. Assn., supra,* 673 F.3d at p. 963.)

DISPOSITION

The order is reversed and the matter is remanded with directions the trial court vacate its order and issue a new order granting KDF's motion to compel arbitration.  KDF is entitled to its costs on appeal.


McDONALD, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.